UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| WILLIAM HUBBARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:20-cv-00227-JPH-MG |
| ) | |
| MICHAEL MITCHEFF, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

William Hubbard brings this lawsuit against Dr. Michael Mitcheff and Nurse Kim Hobson, alleging that they were deliberately indifferent to a serious medical need. He claims the defendants prevented him from receiving monthly eye injections from an offsite specialist. The defendants have moved for summary judgment. For the reasons explained below, the motion for summary judgment is **GRANTED**.

**I. SUMMARY JUDGMENT STANDARD**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. BACKGROUND

Mr. Hubbard has retinal edema in both eyes, neovascularization in his right eye, and retinal detachment in his left eye. Dkt. 47-1, para. 5. He has had monthly appointments with Dr. Sayegh at Terre Haute Eye Center, where he receives monthly injections of Avastin, since August 2018. *Id.* Dkt. 2, pp. 5-6; dkt. 47-3, pp. 11, 13, 17; dkt. 47-5. Avastin is an "anti-VEGF drug." Dkt. 47-1, para. 7, n. 1. VEGF stands for "vascular endothelial growth factor." *Id.* at para. 7.

On November 4, 2019, an outpatient request was submitted for Mr. Hubbard's upcoming appointment with Dr. Sayegh on November 13. *Id.* at para. 6; dkt. 47-3, pp. 19-20. Unlike his other monthly outpatient requests, the November 4 request did not explicitly request approval for Avastin injections; instead, the request sought approval for a follow-up appointment. *Compare* dkt. 47-3, pp. 19-20 *with id.* at 10-11, 16-17. In a section labeled "Procedure / Test Request," the request stated, "OCT and VEGF" *Id.* at 19. Dr. Mitcheff believed that "VEGF" referred to Avastin injections, because Avastin is an anti-VEGF

drug. Dkt. 47-1, para. 7. On November 8, Dr. Mitcheff approved the outpatient appointment and procedure. *Id.* at para. 6; dkt. 47-5, p. 3.

Also on November 8, a second outpatient request was submitted for Mr. Hubbard's upcoming appointment with Dr. Sayegh on November 13. Dkt. 47-3 at 16-17. This request did explicitly request approval for Avastin injections. *Id.* ("Previous [outpatient request] submitted for f/u. . . . Requesting approval for Avastin."). Although the request was approved by Dr. Pierce, that approval wasn't given until November 15—two days *after* Mr. Hubbard's appointment. *Id.* at 11; dkt. 47-5, p. 4. As a result, Mr. Hubbard did not receive his monthly Avastin injections on November 13. *See* dkt. 47-3, p. 13 (December 2 medical record, noting that Mr. Hubbard did not receive his November Avastin injections because the outpatient request was not approved in time, but ensuring that he would receive Avastin injections at his next appointment in December). This was the first month since he began treatment in August 2018 that Mr. Hubbard did not receive Avastin injections. Dkt. 52-2, para. 5.

When Mr. Hubbard returned from his November 13 appointment, he submitted a Request for Health Care form and made the following complaint:

> 11-13-19, I went on a trip for my follow-up (monthly) Avastin eye injection to the Terre Haute Eye Center, but didn't receive them because they said the prison didn't process our (two other inmates) paperwork. Is missing a month for someone in my condition safe? Thank you.

Dkt. 47-4.

Nurse Hobson received this form and provided the following response: "The need for injection by the Eye Center was not relayed to medical. They requested

3

only a follow up. Therefore, an injection was not approved." *Id.* Nurse Hobson states that she did not knowingly relay false information when she sent this response. Dkt. 47-2, para. 8. Nurse Hobson was the facility's Health Services Administrator and was not authorized to approve or deny specific medical treatment. *Id.* at paras. 2-4.

Mr. Hubbard's next appointment with Dr. Sayegh was in December. Dkt. 47-1, para. 10. He received Avastin injections at this appointment. *Id.*; dkt. 47-3, p. 13. Dr. Sayegh wrote a memo to prison officials about Mr. Hubbard's progress. Dkt. 52-1, p. 33. This memo stated, in part, "Intravitreal Avastin injection in both eyes. These injections need to be done every 4 weeks to prevent permanent vision loss and to keep the condition from worsening." *Id.*

On December 18, an outpatient request was submitted for a follow-up appointment with Dr. Sayegh and Avastin injections in January. Dkt. 47-3, pp. 10-11; dkt. 47-5, p. 1. Dr. Mitcheff did not immediately approve this request. Dkt. 47-5, p. 1. Instead, he asked for information about the number of injections Mr. Hubbard had already received as well as Dr. Sayegh's clinical findings. *Id.* He wanted to know this information before deciding whether to approve the outpatient request. *Id.*

Also on December 18, Mr. Hubbard told the medical staff that he was experiencing pain in response to bright light and floaters in his left eye. Dkt. 47-1, para. 10; dkt. 47-3, pp. 7-8; dkt. 52-1, pp. 6-7, para. 7. On January 19, an outpatient request for an ophthalmology appointment was submitted. Dkt. 47-1, para. 10; dkt. 47-3, pp. 7-8. The request was approved on January 21, and

4

Mr. Hubbard was seen by offsite ophthalmologist Dr. Aljajeh on January 27. Dkt. 47-1, para. 12; dkt. 47-3, pp. 1-2; dkt. 47-5, p. 1. Dr. Aljajeh noted that the black rings Mr. Hubbard was seeing were vitreous floaters. *Id.* These are microscopic collagen fibers within the vitreous fluid of the eye that tend to clump and cast shadows on the retina. *Id.* Dr. Aljajeh found no evidence of retinal tugging that could lead to detachment. *Id.*

Mr. Hubbard did not receive Avastin injections or meet with Dr. Sayegh in January 2020. Dkt. 47-3, p. 2. He met with an onsite optometrist on January 22, and the optometrist asked him how many Avastin injections he had received. *See* dkt. 52-1, p. 8, para. 10. On February 18, he met with Dr. Sayegh and received Avastin injections. Dkt. 52-1, p. 67. In a memo, Dr. Sayegh wrote, "Achieving stability with excellent vision in both eyes. Important to maintain timely treatment." *Id.*

In July 2021, Mr. Hubbard did not receive Avastin injections. *Id.* at p. 7-8, para. 13. He submitted a Request for Health Care form and asked to know why his injections were not approved. *Id.* at 31. The medical staff told him that the approval was delayed because of the Indiana Department of Correction's transition to a new medical provider. *Id.* The evidence does not indicate that the defendants had any role in delaying this approval.

As of August 27, 2021, Mr. Hubbard continued to receive monthly Avastin injections. Dkt. 47-1, para. 14; dkt. 52-1, para. 3. Aside from the missed injections in November 2019, January 2020, and July 2021, there is no evidence

that he missed any other monthly Avastin injections or appointments with Dr. Sayegh.

### III. Discussion

#### A. Deliberate Indifference Standard

Mr. Hubbard is a convicted prisoner, so his medical treatment is evaluated under standards established by the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

"To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotations omitted).

#### B. Analysis

Mr. Hubbard has not designated evidence showing that the defendants were deliberately indifferent to his serious medical need. The occasional missed

6

injections were only partially, if at all, caused by the defendants. Considering the otherwise consistent care Mr. Hubbard received over several years, no reasonable jury could conclude that the three missed injections were due to deliberate indifference of Dr. Mitcheff and/or Nurse Hobson. *See Petties v. Carter*, 836 F.3d at 728 (noting that courts "look at the totality of the inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs").

### 1. Dr. Mitcheff

Mr. Hubbard was supposed to receive monthly injections of Avastin to treat chronic retinal illnesses. Over three years, he missed monthly injections on three occasions.

Mr. Hubbard has designated no evidence showing that the injections he missed in November 2019 were caused by Dr. Mitcheff's deliberate indifference. On November 8, Dr. Mitcheff approved an outpatient request for a follow-up appointment with Dr. Sayegh. Dkt. 47-1, para. 6. The request stated that Mr. Hubbard would receive treatment for VEGF, which Dr. Mitcheff interpreted to mean Avastin injections. *Id.* at para. 7. For reasons that are not entirely clear from the record, Mr. Hubbard did not receive Avastin injections during his appointment on November 13. Dkt. 17-4. The Court notes, however, that the outpatient request Dr. Mitcheff received in November did not explicitly refer to "Avastin" injections while requests for previous months did. Dkt. 17-3, pp. 19-20. Also, the same day that Dr. Mitcheff approved the request, a second outpatient request was sent to Dr. Pierce. *Id.* at 16-17. Dr. Pierce, who is not a

defendant in this case, did not approve this request until after the November 2019 appointment had already taken place. *Id.* at 13.

At most, the missed injections in November 2019 were the result of an administrative oversight akin to negligence. *See Petties*, 836 F.3d at 728 (to prove deliberate indifference, negligence in not enough; the plaintiff must show that the defendant "did not just slip up, but was aware of, and disregarded, a substantial risk of harm."). Mr. Hubbard has designated no evidence allowing a jury to find that he did not receive the injections in November because Dr. Mitcheff was deliberately indifferent.

Mr. Hubbard similarly has designated no evidence that the missed injections in July 2021 were caused by Dr. Mitcheff's deliberate indifference. Instead, the designated evidence shows that these missed injections were caused by delays in the outpatient approval process during the transition to a new medical provider. Dkt. 52-1, p. 31. There is no evidence that Dr. Mitcheff delayed approval for this request.

That leaves the missed injection in January 2020. Dr. Mitcheff did not approve or deny the outpatient request for this month. Instead, he wanted to know the number of injections Mr. Hubbard had already received and Dr. Sayegh's clinical findings before approving the request. Dkt. 47-1, para. 11; dkt. 47-5, p. 1. Dr. Mitcheff asked for this information about three weeks before the requested follow-up appointment on January 14. *Id.* The medical staff did not try to obtain this information until January 22, at which time it was already too

late to obtain approval for the January 14 appointment. Dkt. 52-1, p. 8, para. 10.

Mr. Hubbard argues that Dr. Mitcheff was deliberately indifferent in withholding approval for the January 2020 appointment because he effectively overruled the treatment recommendations by Dr. Sayegh, who is an ophthalmology specialist. *See* dkt. 52, p. 22 (citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *Jones v. Simek*, 193 F.3d 485, 490-97 (7th Cir. 1999) (holding that evidence that a prison doctor refused to follow orders from a specialist precluded summary judgment)).

This case, however, is distinguishable from *Jones*. In *Jones,* an inmate suffering from arm pain visited the prison doctor several times. The inmate alleged that the doctor diagnosed the problem as nerve damage and promised to schedule an appointment with a specialist. The doctor did not schedule the appointment for approximately six months, during which time the doctor refused to provide pain medication and treated the prisoner with hostility. When the specialist prescribed a sling, medication, and a consultation with an anesthesiologist, the prison doctor ignored the specialist's advice for months until another specialist performed a nerve block. In the meantime, the inmate lost the use of his right arm from the elbow down and suffered great pain. *Jones,* 193 F.3d at 488. The Seventh Circuit held that the six-month delay in providing an appointment with a specialist and the refusal to then follow the specialist's advice, if proven, would meet the standard for deliberate indifference to serious medical needs. *Id.* at 491; *see also Gil v. Reed,* 381 F.35 649, 663-64

(7th Cir. 2013) (holding that the prison doctor's decision following the inmate's rectal surgery to discontinue laxatives against the surgeon's advice and withhold Vicodin in favor of Tylenol III, which the surgeon had explicitly warned the medical staff not to prescribe, precluded summary judgment for the prison doctor).

Here, unlike the prison doctors in *Jones* and *Gil*, Dr. Mitcheff routinely approved Mr. Hubbard's monthly appointments with Dr. Sayegh and injections of Avastin beginning in August 2018. The first and only time Dr. Mitcheff withheld approval for an offsite visit and Avastin injections was for the appointment in January 2020. Even then, Dr. Mitcheff did not deny the request for an outpatient visit; he merely requested more information before granting approval. He requested this information weeks before the requested appointment, but prison medical staff did not collect this information for another month. Once that information was brought to Dr. Mitcheff's attention, he approved Mr. Hubbard's offsite treatment for February 2020, and for each and every month while Mr. Hubbard was under his care. *Jones* does not require prison doctors to spontaneously and unthinkingly approve each and every request made by a specialist without first asking for information about and considering the specialist's course of treatment and clinical findings.

The record is unclear as to why the medical staff did not obtain this information for Dr. Mitcheff's review sooner, *i.e.*, before the January appointment with Dr. Sayegh, but Mr. Hubbard has designated no evidence that the delay was due to deliberate indifference from Dr. Mitcheff. And given Mr. Hubbard's

10

otherwise consistent outpatient care over three years, no reasonable factfinder could infer that Dr. Mitcheff recklessly disregarded a substantial risk to Mr. Hubbard's retinal illness. Accordingly, Dr. Mitcheff's motion for summary judgment is **GRANTED**.

### 2. Nurse Hobson

Nurse Hobson was the Health Services Administrator for Mr. Hubbard's facility. Dkt. 47-2, para. 2. Her duties were mostly administrative, and she was not able to approve or deny Mr. Hubbard's outpatient requests. *Id.* at paras. 3-4.

Mr. Hubbard's claim against Nurse Hobson is based on her response to his missed Avastin injections in November 2019. *See* dkt. 52, pp. 24-30. When Mr. Hubbard submitted a Request for Health Care form asking why his Avastin injections were not approved, Nurse Hobson told Mr. Hubbard that the facility had not received a request for Avastin injections. Dkt. 47-4. While Nurse Hobson's response was not accurate, Mr. Hubbard has designated no evidence showing that her statement was due to anything more than an oversight. Similarly, the evidence does not suggest that Nurse Hobson engaged in a conspiracy with Dr. Mitcheff to deprive Mr. Hubbard of necessary retinal care. *See* dkt. 2, pp. 11-12.

Mr. Hubbard has not explained how this response impacted his medical care. The response did not cause his missed injections in November 2019, which had already occurred, or the missed injections in January 2020 or July 2021. Dkt. 52-1, p. 31. There is no evidence that Mr. Hubbard's medical care was

negatively affected by Nurse Hobson, and her motion for summary judgment is **GRANTED**.

### IV. CONCLUSION

The defendants' motion for summary judgment, dkt. [45], is **GRANTED**. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date: 3/28/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

WILLIAM HUBBARD
945818
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Sarah Jean Shores-Scisney
KATZ KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com